IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 20, 2006

**EARNEST F. BROWN v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Davidson County**
**Nos. 2003-D-2461, 2004-A-77, 2004-B-1679, 2004-C-2030, and 2004-C-2039**
**Steve R. Dozier, Judge**

---

**No. M2005-02439-CCA-R3-PC - Filed February 2, 2007**

---

In October 2004, Petitioner, Earnest F. Brown, pled guilty to two counts of theft of property over $1,000.00, one count of burglary, two counts of burglary of a motor vehicle, and one count of assault. In exchange for his plea, the trial court sentenced Petitioner to serve two years as a Range I offender for the first conviction of theft over $1,000.00, four years as a Range II offender for the second conviction of theft over $1,000.00, two years as a Range II offender for each burglary of a motor vehicle conviction, and eleven months, twenty-nine days for the assault conviction, for a total effective sentence of fourteen (14) years, eleven (11) months, twenty-nine (29) days. In June 2005, Petitioner filed a pro se petition for post-conviction relief. After appointing counsel and conducting a hearing, the post-conviction court denied Petitioner post-conviction relief. Petitioner now appeals that denial arguing that the trial court erred in denying his petition because (1) his guilty pleas were not knowingly and voluntarily entered, and (2) he did not receive effective assistance of counsel. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Earnest F. Brown.

Robert E. Cooper, Jr., Attorney General and Reporter; David E. Coenen, Assistant Attorney General, and Victor S. (Torry) Johnson III, District Attorney General; Pamela Anderson, Assistant District Attorney General; and Ami Eisenbeck, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Guilty Plea**

At the guilty plea proceeding, Petitioner stated that he was taking the prescribed medications Haldol, Lithium, and Thorazine, but indicated that he understood why he was in court and stated that his purpose for being in court was "taking a plea." The State outlined the offenses which Petitioner was pleading guilty to, and the trial court explained the range of punishment for each offense. Petitioner affirmed that he understood what he was being charged with and the range of punishment as well as the recommended sentence. He likewise affirmed that he had discussed the charges with his attorney and that he was satisfied with counsel's representation.

Petitioner said that he did not have any questions regarding his guilty pleas. He acknowledged that if at any time he did not understand some part of the proceedings he should tell his trial counsel and the court would clarify any confusing issue. He further acknowledged his right to a jury trial with respect to each offense and his understanding that by entering a guilty plea he was waiving his right to a jury trial. Petitioner indicated that it was his choice to enter a guilty plea and that he was doing so voluntarily after reviewing his plea agreement with counsel. He affirmed his understanding that these convictions could be used against him in the future. He reiterated that he understood what he was doing as well as the consequences of his pleas. The following stipulated facts were then read into evidence by the State:

> Your Honor, on Case Two-thousand-four-B-sixteen-ninety-seven, as to the "D" felony theft, the State's proof would be that, on April ninth of two-thousand-four, at about six-twenty in the morning, Sergeant Lee Dupie observed a traffic violation by the driver of a red Chevrolet truck.
>
> He stopped this individual, determined the identity to be this Defendant, Mr. Earnest Brown, who did not have a driver's license on his person.
>
> At that time Sergeant Dupie issued him a traffic citation for running a red light, a non-turn-signal and a seat-belt law.
>
> Approximately a minute later, Kathy Fugate telephoned the Metro Police and stated that her nephew, the Defendant, Earnest Brown, had just left her place of employment and that she believed that he was driving a truck that was possibly stolen.
>
> The police were dispatched the description; and the police were able to find that the Chevrolet pickup that the Defendant was driving was registered to Leonard - - Lozano, who had not even been aware that his vehicle was missing or that it was stolen yet at that point.

All of this occurred here in Nashville, Davidson County; that the truck was valued over a thousand dollars, and the Defendant did not have the consent to have the vehicle (sic).

As to two-thousand-four-A-seven-seven, the State's proof would be that, on November twenty-eighth of two-thousand-and-three, a Metro Police officer observed a white Chevrolet Blazer, that had the name, "Jesus," on a license place on the front of it.

This vehicle was located at Holly Street and South Eleventh Street, here in Nashville, Davidson County.

Officer Proctor had previously read on his computer that a vehicle matching that description had been stolen from Sixteen-Ten Gartland Avenue.

He turned around to get behind the vehicle, confirmed that there was a pickup on the vehicle, and then initiated his emergency equipment. He stopped the vehicle, and the Defendant, Earnest Brown, along with the Co-defendant, Randall Bowman, were in the vehicle.

The - - the vehicle was valued at approximately three-thousand dollars. The Defendant did not have the consent of the owner to be in possession of this vehicle.

And the Co-defendant in this case, Randall Bowman, who's previously pled, has given a proffer to the State and would've testified, had this gone to trial.

As to Two-thousand-four-C-twenty-thirty, the State's proof would be that, on May seventeenth of two-thousand-and-four, Mr. Kevin Perkins would testify that, when he came to his home, he was walking up the stairs to his apartment, when he encountered the Defendant, that he noticed that the Defendant was wearing his tennis shoes.

When the victim asked - - Mr. Perkins asked for his shoes back, the Defendant then told him to try and take them if he wanted them. The Defendant then tried to hit Mr. Perkins with a beer bottle.

All of this occurred here in Nashville, Davidson County, on May seventeenth of two-thousand-four.

As to Two-thousand-four-C-twenty-thirty-nine, the State's proof would be that, on May twenty-sixth of two-thousand-and-four, Officer Womack was dispatched to Thirteen-O-One Boscobel Street, in regards to a theft.

This location is here in Nashville, Davidson County. Mr. Frank Pierce had advised the police that his vehicle had been broken into and that some of the property taken from the vehicle was left lying next to his vehicle.

Mr. Pierce hid in the bushes, to watch and see if the person who did this was going to come back. The Defendant shortly thereafter walked back towards the vehicle; and hence (sic) he was beginning to grab the property, Mr. Pierce jumped out of the bushes, grabbed at him, chased the Defendant down the street, but he was able to get away.

Officer Womack went to the residence of the Defendant's grandparents and asked for consent to search the residence. This was after he had encountered Mr. Brown, read Mr. Brown his rights, and Mr. Brown denied knowing anything about this incident.

However, the saw that was stolen from Mr. Pierce's vehicle was inside the residence of his grandparents.

All of this occurred here in Nashville, Davidson County.

As to Two-thousand-three-D-twenty-four-sixty-one, the State's proof would be that, on April tenth of two-thousand-and-three, about nine-thirty that morning, an officer was dispatched to the victim's, Scott McEwen's, residence, at Twele-O-Two Boscobel Street, here in Nashville, Davidson County, East Nashville.

Mr. McEwen told the police that someone had broken into his garage. It was a garage that was not attached to the home. The garage had been forcibly broken into, as well as the vehicle which was inside the garage had been broken into (sic).

Several items were missing from the garage and car, including over a thousand dollars' worth of musical instruments, equipment, and electronic equipment.

No one observed the crime occur; however, the Metro Police Identification Section was able to lift latent prints from the driver's door frame of Mr. McEwen's vehicle, that was parked in the garage.

Those latent prints were developed and were found to match the left, middle fingerprint of the Defendant, or Mr. Brown, who happened to be a neighbor of Mr. McEwen.

He did not have Mr. McEwen's permission to have any of these items or be in his garage.

All of this occurred here in Nashville, Davidson County.

Following the recitation of the facts, the trial court questioned Petitioner as to whether he heard the facts and whether the statements about the burglaries, thefts, and assault were true. Petitioner affirmed that he heard the facts and that they were true. The court then asked for Petitioner's plea to which he responded he was pleading guilty on all charges, including two counts of theft over one thousand dollars, one count of assault, two counts of burglary of a motor vehicle, and burglary. The trial court accepted the pleas finding that they were knowingly and voluntarily entered.

## II. Post-Conviction Hearing

At the post-conviction hearing, Petitioner's trial counsel, Tracey Robinson-Coffee, testified that she had been practicing law for approximately eight years and that seventy-five percent of her legal practice consisted of criminal defense. She stated that she represented Petitioner prior to the time he entered his guilty pleas. During the course of her representation, trial counsel spoke with Defendant "eight to ten times." During each of these discussions, trial counsel and Petitioner discussed the charges against him, the elements of each charge, the State's proof, and the potential range of punishment for each crime.

Trial counsel said that she was initially retained to represent Petitioner in case number 2003-D-2461 when that case was pending in general sessions court. At that time, Petitioner had two other cases pending in circuit court. At the family's request, trial counsel took on the additional circuit court cases. Pending adjudication of these charges, Petitioner was arrested and charged with another crime. Trial counsel investigated each of the indictments independently because Petitioner's family did not have funds to hire a private investigator on his behalf.

Trial counsel recalled that Petitioner was charged with theft of property over one thousand dollars which involved an automobile owned by an individual named Mr. Lozano. Petitioner told trial counsel that he had permission to use the car because he had given the owner drugs in exchange for the use of the car. Trial counsel later determined that the individual with whom Petitioner made this exchange was not the true owner of the vehicle. Counsel attempted to contact this unknown individual using information provided by Petitioner. She was not able to contact this individual, nor was she able to contact Mr. Lozano despite making "several attempts."

Trial counsel recalled another case of theft over one thousand dollars which involved theft of a car from Ms. Heidi Taylor. She said that in this case, Petitioner was the passenger in the car and his co-defendant was the driver. She could not recall the details of the car or its condition upon recovery. She likewise could not recall any attempt to negotiate a settlement on Petitioner's behalf lessening the theft charge to unauthorized use of a vehicle.

Although trial counsel had difficulty recalling the specifics of each of Petitioner's indictments, she stated that she did recall having problems negotiating with the State regarding a plea agreement on Petitioner's behalf. Specifically, she stated that the problem with negotiating a settlement was that "every single time that [Petitioner] would post a bond, he would pick up a new

case. And basically what I understand of the law, when you are out on bond and you pick up a new case and you plead to these cases, the cases are going to be run consecutive and not concurrent. So, that was the problem I was having with trying to negotiate a plea with the State."

Trial counsel said that Petitioner did indicate at times that he wanted to go to trial rather than plead guilty to the charges. They discussed the possibility of going to trial because there were possible defenses to some of the charges, namely the theft charge wherein Petitioner was the passenger in the car and not the driver. She explained to Petitioner that although he might be found not guilty on some of the charges if he went to trial, he did not have a defense to all of the charges and would most likely be found guilty on some counts. Because Petitioner would likely be found guilty, and because he was a Range II offender at the outset, trial counsel advised him against trial because he would be risking a possible twenty-year jail sentence.

Trial counsel said that she read and discussed Petitioner's plea agreement with him, including the charges he was pleading to and the range of punishment. She said that she was aware that Petitioner suffered from bipolar disorder and that past, personal experiences had caused him additional psychological damage. Trial counsel had Petitioner evaluated by a psychiatrist who found Petitioner competent to stand trial. Trial counsel was aware that Petitioner was prescribed psychotropic medication by a doctor, and that he was taking this medication on the day that he entered his guilty pleas. She said that nevertheless, Petitioner indicated that he understood what he was doing when he entered his guilty pleas.

Trial counsel said that Petitioner had been taking the psychotropic drugs prior to his incarceration. After his initial incarceration, Petitioner went without the drugs for a time period, but he began taking them again and had been taking the drugs for "a couple of months" before he entered his guilty pleas. Trial counsel met with Petitioner in jail while he was taking the drugs. According to counsel, during these meetings, Petitioner engaged in "competent conversation" and they were able to intelligently discuss his cases and the range of punishment involved with each case. She stated that "[i]n fact, . . . the medications were somewhat calming to him. Because prior to him taking the medications when I would see him in jail, I remember one or two incidents that he was kind of agitated. So, I think that the medications helped him." She likewise discussed all of the available discovery with Petitioner. She reiterated that she and Petitioner repeatedly discussed the various aspects of his cases. On the day of his pleas, they discussed these things again as well as the plea agreement itself. Petitioner did not ask any questions regarding what he was pleading guilty to or the range of punishment involved. He appeared to trial counsel to understand all aspects of the discussion.

Petitioner testified that he did not know how many times he met with trial counsel prior to entering his guilty pleas. He said that trial counsel discussed each of his cases with him, but he did not know if she investigated the charges against him. Petitioner initially did not recall that the stipulated facts were read into the record at the guilty plea proceeding. However, after having his memory refreshed, Petitioner acknowledged that the facts recited at his guilty hearing were true with the exception that the truck was not stolen. With respect to the conviction wherein he was the

passenger in the car, he denied his guilt and any knowledge that the car was stolen although he remembered pleading guilty to the crime. Petitioner said he did not know why he had agreed to the facts as true other than he was "messed up" on his medication at the time of his pleas.

Petitioner said that he was taking Haldol, Lithium, and Thorazine for bipolar disorder on the day he entered his guilty pleas. He said that he had been taking those kinds of medication "just about" all of his life. He did not recall the trial court asking him if he was taking any medication at the time of his guilty pleas, but stated that the drugs did affect his ability to understand what he was doing when he pled guilty. He further stated that at the time of the post-conviction hearing, it had been "about eight months" since he had taken his medication and he "understand[s] a whole lot more now that [he] is off of them."

Petitioner stated that he wanted to go to trial rather than plea. He denied any recollection that he waived his right to a jury trial during his guilty plea. He said that he did not inform the Court that he wanted a trial at the time of his plea because he "didn't know what [he] was doing at the time." Petitioner did not know if he told his attorney that he wanted a trial, and he could not recall what his attorney told him regarding whether he should go to trial. He stated, "[m]y attorney told me 14 years is the best I was going to get. So, I signed for it." Petitioner indicated that were he not taking his medication, he would not have agreed to enter his guilty pleas.

Petitioner initially stated that trial counsel did not go over the plea agreement document with him, nor did she discuss the elements of the crimes he was charged with or the State's evidence against him. Petitioner said that trial counsel failed to discuss possible defenses or to explain the State's burden of proof to him. However, on cross-examination, he admitted that trial counsel explained what he was being charged with and what each offense meant, and that because of this he was able to identify individuals trial counsel should speak with in conducting her investigations. He further admitted that trial counsel explained the range of punishment associated with each crime, and that in light of the evidence against him, she advised him to enter the plea agreement in exchange for a sentence of fourteen years, eleven months, twenty-nine days. Finding it in his best interest to plea, Petitioner acted on trial counsel's advice.

At the conclusion of the post-conviction hearing, the post-conviction court denied the petition for post-conviction relief. The court then issued an order denying the petition in which the court made the following findings of fact and conclusions of law:

> The petitioner's first claim is that trial counsel was ineffective in that trial counsel failed to counsel the petitioner thoroughly regarding the possible outcome of a trial should the case have proceeded to trial. The Court heard adequate proof, *that was not rebutted by the petitioner*, that trial counsel thoroughly investigated the facts and circumstances of the case. Ms. Robinson-Coffee testified that she met with the petitioner a total of "eight to ten times" and discussed the State's strength of the evidence thoroughly with the petitioner including the possible outcome should a jury

convict the petitioner in each of the aforementioned indictments. The witness also stated that she recalled explaining the probability of a conviction and the chance, if any, of a successful defense should the cases had [sic] proceeded to respective trials. The defendant conceded that trial counsel met with him on various occasions and discussed "all the cases." Based on this admission, and the uncontroverted proof offered by the State, the petitioner has failed to show, by clear and convincing evidence, that counsel was "not functioning as the counsel guaranteed the defendant by the Sixth Amendment" in regards to his first issue. *Strickland* at 687; *See also* Tennessee Code Annotated § 40-30-210. Therefore, the petitioner's initial claim is respectfully without merit.

The petitioner's second claim is that trial counsel failed to adequately [apprize] the petitioner of his possible defenses and what the State's evidence was against the petitioner. The Court must note, as suggested above, that trial counsel stated that she met with the petitioner "eight to ten times" regarding the various charges and that the petitioner conceded on cross-examination that trial counsel met and discussed all the cases with him. This, in the Court's opinion, is proof in and of itself that the petitioner has failed to carry his burden in accordance with *Strickland*, supra. However, the Court shall elaborate further. In 2004-A-77, Ms. Robinson-Coffee stated she was made aware of a possible defense by the petitioner in that the petitioner was a passenger of the car that was stolen from Heidi Taylor. However, trial counsel felt that a problem with this possible "defense" was that the petitioner was facing numerous charges and committed the acts while out on bond, thus facing the possibility of the convictions running consecutive by law. In 2004-B-1697 the petitioner alleged that he made trial counsel aware of a possible defense in that he received the stolen car from Leonard Lozano with permission. However, the Court must point out that at the entrance of the guilty plea, the petitioner, when asked by the Court if the facts stated by the State were true in that he stole the vehicle, the petitioner responded that they were. This is supported by a transcript of the guilty plea which was introduced as an exhibit (Exhibit 1). Therefore, the Court is of the opinion that the petitioner has failed to show by clear and convincing evidence that trial counsel's work was not "within the range of competence demanded of attorney's in criminal cases." *Baxter* at 936. Nor has the petitioner established that his case was prejudiced as a result of counsel's ineffectiveness. *Strickland* at 697. Therefore, in accordance with *Strickland*, supra, and its progeny, the petitioner, as to his second contention, has failed to show to this Court a deficiency with counsel['s] performance that offends his Sixth Amendment rights.

The petitioner's third and final issue is that trial counsel was ineffective in that trial counsel let the petitioner enter guilty pleas in the above-styled cases while under the influence of mind-altering drugs and, thus, it can not be said that the petitioner knowingly and intelligently waived his constitutional rights at the entrance of such pleas.

. . . .

The petitioner claims his convictions are invalid in light of violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution as well as the Due Process provisions of the United States and Tennessee Constitution in that his plea of guilty was involuntary and was not knowingly and intelligently entered. *Boykin* at 338. The petitioner asserts that at the time of entering his guilty plea, he was under the effects of Haldol, Lithium, and Thorazine and that these "mind-altering" drugs had an effect on his ability to comprehend the nature and consequences of the rights to which he waived in entering the guilty pleas. Trial counsel testified that she had competent conversations with the petitioner regarding his cases with the assistance of the medications stated above. The petitioner avers that he was [sic] received such "mind-altering" drugs at the time of the plea and that such a chemical consumption had a direct effect at the entrance of the plea. The Court has reviewed the transcript and points out that the Court was made aware of the petitioner's medicine consumption at the time of the plea. The court must also point out that the Court asked the petitioner if he understood what he was in Court for and the petitioner responded "taking a plea." The court also instructed the petitioner that at if any time he does not understand what the inquiries are, he could ask trial counsel or the court. The petitioner responded that he understood. The Court is of the opinion that the petitioner has failed to show that his entrance of the plea was the result of "mind-altering" drugs and, therefore, his plea was not entered into *voluntarily, understandingly and intelligently. Boykin* at 338. Trial counsel stated she had numerous conversations with the petitioner while on the same medications and that the exchanges were competently conducted. Further, the Court went so far as to ask the petitioner if he understood why he was in court and he responded that he was present to enter a plea of guilty. The court must state that this averment fails to rise to meritorious claim under *Strickland*, supra, and its progeny. Therefore, the third issue is without merit.

The Court has reviewed the record and recalls that trial counsel Tracey Robinson-Coffee represented the petitioner with vigor and zealousness. Under the standards set forth under *Strickland*, supra, the petitioner has not carried his burden by clear and convincing proof. Based on the forgoing analysis, the Court is of the opinion that the petitioner's petition as to any and all issues raised should be respectfully *denied*.

## III. Analysis

### A. Post-Conviction Standard of Review

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. *See* T.C.A. § 40-30-110(f); *Momon v. State*,18 S.W.3d 152, 156 (Tenn. 1999). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the trial court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). All questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *See Momon*, 18 S.W.3d at 156; *Henley*, 960 S.W.2d at 578-79. However, the post-conviction court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

## B. Knowing and Voluntary Guilty Plea

Petitioner contends that his guilty pleas were not knowingly and voluntarily entered because he received inadequate advice from counsel and because he was under the influence of "mind-altering" drugs at the time of his guilty pleas. Specifically, Petitioner asserts that his pleas were not knowingly entered because trial counsel failed to adequately inform him of the possible sentences he would receive should his case proceed to trial. He further contends that he was not adequately advised regarding the elements of the crimes charged, the evidence that the State had against him, the State's burden of proof, or possible defenses. He argues that although the guilty plea agreement was explained to him by trial counsel, "insufficient time was taken to ensure that Petitioner understood what he was doing." He asserts that because of his medication, he "did not fully comprehend what he was doing or the sentence he was going to receive." He argues that trial counsel was aware he suffered from psychological issues and was taking medication, but took no "special precautions" to ensure that he knowingly entered his guilty pleas. He further argues that the medication caused him to agree to a set of facts that were not true. He asserts that because his pleas were not knowingly given it was in violation of his Fourteenth Amendment rights.

As noted by the trial court, a guilty plea must be voluntarily, understandingly, and knowingly entered to pass constitutional muster. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969); *State v. Neal*, 810 S.W.2d 131, 135 (Tenn. 1991), *overruled in part on other grounds by Blankenship v. State*, 858 S.W.2d 897 (Tenn. 1993). In examining whether a guilty plea was knowingly and voluntarily entered, the standard is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Jaco v. State*, 120 S.W.3d 828, 831 (Tenn. 2003) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970)). As further noted by the trial court, a court may consider a number of factors in making this determination. *Blankenship*, 858 S.W.2d at 904. These factors include: 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal

proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. *Id*.

Before accepting a guilty plea, the trial court must question the defendant on the record to ensure that the defendant is knowingly and voluntarily entering the plea. *See Boykin*, 395 U.S. at 243-44, 89 S. Ct. 1709. In *Boykin v. Alabama*, the United States Supreme Court held that the trial court must question the defendant to ensure the defendant understands that by entering the plea he is waiving the privilege against self-incrimination, the right to a jury trial, and the right to confront his accusers. 395 U.S. at 243-44, 89 S. Ct. 1709.

Applying these principals, we agree with the trial court and conclude that Petitioner's guilty plea was knowingly and voluntarily entered. The transcript from the guilty plea proceeding reveals that the trial court correctly informed Petitioner regarding his constitutional rights and specifically asked if he understood that he was relinquishing those rights by pleading guilty. According to the record, Petitioner repeatedly affirmed his understanding of the proceedings, the charges against him, and the consequences of his decision to plead guilty. Petitioner affirmed that he was satisfied with trial counsel's representation. Petitioner acknowledged that he was taking the prescribed medicines, Haldol, Lithium, and Thorazine, but assured the trial court that he understood what was happening and why he was in court. He stated that his purpose for being in court was "taking a plea." He affirmed that he was entering the plea voluntarily after informed discussions with counsel. Additionally, trial counsel testified that she had several discussions with Petitioner regarding the charges, the evidence against him, the State's burden of proof, the possible range of punishment for each crime, and the consequences of going to trial versus accepting a plea agreement. Several of these discussions were conducted while Petitioner was taking his medication. As noted by the trial court, trial counsel testified that they were "competent" conversations wherein she and Petitioner intelligently discussed his cases. She also testified that she hired a psychiatrist to evaluate Petitioner, and the psychiatrist determined that Petitioner was competent to stand trial. Moreover, Petitioner testified on cross-examination that he did discuss pertinent issues with counsel, including possible sentences he might receive if he choose to go to trial. He admitted that after having these discussions with counsel, he made the decision to plead guilty because it was the best option. As such, we cannot conclude that Petitioner's guilty pleas were unknowingly and involuntarily entered in violation of his constitutional rights.

## C. Ineffective Assistance of Counsel

Petitioner next argues that trial counsel provided ineffective assistance of counsel because she failed to adequately investigate the charges against him, failed to discuss the elements of the crimes with which he was charged, failed to discuss the State's evidence against him, failed to discuss possible defenses, failed to explain the State's burden of proof, and failed to adequately advise him regarding his guilty plea.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that the services rendered by trial counsel were deficient and that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). When a petitioner claims ineffective assistance of counsel in relation to a guilty plea, the petitioner must prove that counsel performed deficiently and, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . thus, [appellate] review of [these issues] is *de novo* " with no presumption of correctness. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Petitioner asserts that counsel did not adequately investigate the charges because she did not interview potential witnesses. He asserts that although counsel testified that she was unable to locate Mr. Lozano, Petitioner had identified Mr. Lozano and pointed him out to trial counsel in court. Petitioner asserts that had counsel interviewed Mr. Lozano, she would have discovered that Petitioner had permission to use Mr. Lozano's truck, which Petitioner was convicted of stealing, because he gave Mr. Lozano a "piece of dope" in exchange for use of the truck. Trial counsel testified that Petitioner initially told her he had exchanged drugs for permission to use the car. Trial counsel later discovered, however, that Petitioner had conducted this exchange with someone other than the car's true owner. Using information provided to her by Petitioner, trial counsel attempted to investigate Petitioner's allegations by contacting both the owner of the vehicle, Mr. Lozano, and the individual with whom Petitioner actually made the exchange. The contact information Petitioner gave to trial counsel was not accurate and consequently her attempts were unsuccessful. Mr. Lozano was not called to testify at the post-conviction hearing. *See Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App.1990) (imperative that witnesses testify to determine prejudice). Thus, Petitioner's argument is essentially a request that we review the post conviction court's credibility determinations as between Petitioner and trial counsel. The post-conviction court chose to accredit the testimony of trial counsel over that of Petitioner. As previously stated, credibility determinations

are entrusted to the post-conviction court. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). We see nothing in the record to preponderate against the post-conviction court's findings.

Petitioner offers no specific factual support for his remaining claims that trial counsel was ineffective. He makes only bare allegations that counsel was ineffective because she failed to discuss the elements of the crimes with which he was charged, failed to discuss the State's evidence against him, failed to discuss possible defenses, failed to explain the State's burden of proof, and failed to adequately advise him regarding his guilty plea. Trial counsel testified that she met with Petitioner "eight to ten times." During each of these meetings, trial counsel and Petitioner discussed the charges against him, the range of punishment, the elements of the crimes charged, the State's proof, and possible defenses. At the post-conviction hearing, Petitioner admitted that these conversations had taken place and that trial counsel had discussed these various aspects of his cases with him. The post-conviction court found that "[b]ased on this admission, and the uncontroverted proof offered by the State, the petitioner has failed to show, by clear and convincing evidence, that counsel was 'not functioning as the counsel guaranteed the defendant by the Sixth Amendment.' . . . Nor, has the petitioner established that his case was prejudiced as a result of counsel's ineffectiveness." We agree with the post-conviction court. Petitioner has failed to meet his burden of demonstrating that counsel's performance was deficient. Accordingly, he is not entitled to relief on this issue.

**CONCLUSION**

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE